This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Linda Thomas appeals from the judgment of the Summit County Court of Common Pleas granting summary judgment to defendant Cuyahoga Falls General Hospital.
 I.
In February 1995, Linda Thomas was in the process of obtaining a divorce against the wishes of her husband Gail Thomas. Gail owned a business and Linda believed that Gail opposed the divorce because of the financial consequences. Linda had a history of alcoholism, but had been sober since 1991. However, by late 1994 she exhibited some paranoid behavior that concerned Gail and the couple's adult children Andrew and Debbra. On February 23, 1995, Gail, Andrew and Debbra discussed the possibility of having Linda involuntarily committed to in-patient psychiatric treatment. Debbra opposed the commitment, but Andrew signed a probable cause affidavit with the Summit County Probate Court deputy at Portage Path mental health center. Andrew stated that he believed Linda was a danger to others based on Linda's statement to Gail several months earlier that she "could kill" Gail.
On February 24, 1995, following the order of a probate court magistrate, Linda was transported to Cuyahoga Falls General Hospital ("the hospital") for inpatient psychiatric care. She agreed to be treated by Dr. Renga Pakeeree, a psychiatrist who had seen Linda in the past. On Monday, February 27, 1995, Dr. Pakeeree returned from a vacation and began to treat Linda in the hospital. He diagnosed Linda as suffering from a delusional disorder, paranoid type. A probate hearing was held on March 3, 1995, and the magistrate ordered Linda to be involuntarily hospitalized for no longer than ninety days, pursuant to R.C. 5122.15. Linda remained at the hospital under the care of Dr. Pakeeree until March 21, 1995. Following her discharge, Linda continued to see Dr. Pakeeree on an outpatient basis, and continued to take the prescribed medication for approximately two months. Linda appealed the probate court decision, and on January 24, 1996, this court reversed the probate court's judgment. Inre Mental Illness of Thomas (1996), 108 Ohio App.3d 697.
On February 21, 1996, Linda filed suit against Gail, Andrew, Thomas Asphalt Paving Company (Gail's business), Portage Path, Dr. Pakeeree, and the hospital, claiming various torts including wrongful imprisonment, medical malpractice, invasion of privacy, and violation of Linda's right to participate in her own treatment, including the right to be treated by a doctor and a hospital of her choice. Ultimately, Linda dropped her claims against Gail, Andrew, and Thomas Asphalt Paving, and settled with Portage Path. The court granted the hospital's motion for summary judgment. The case against Dr. Pakeeree proceeded to trial and the jury rendered a verdict in the doctor's favor.
Linda appealed both the verdict and the grant of summary judgment to the hospital. This court affirmed the verdict, but reversed on summary judgment for the hospital, because the hospital had not included appropriate evidentiary materials in support of its motion, as required by Civ.R. 56(C). Thomas v. Pakeeree (Nov. 25, 1998), Summit App. No. 18789, unreported, at 11-12.
On remand, the hospital filed another motion for summary judgment, this time appending evidentiary materials in support of the motion. The trial court granted summary judgment to the hospital on September 27, 1999. Linda filed the instant appeal, assigning two errors, which we will address in reverse order.
 II.
Assignment of Error No. 2:
 The trial court erred in ignoring the mandate of the Court of Appeals remanding the case to the trial court.
Linda argues that the trial court could not appropriately grant summary judgment upon remand by this court. Linda suggests that our appellate decision became the law of the case, which could not be disturbed because the hospital presented no expanded record to support the second motion for summary judgment.
"[T]he doctrine of the law of the case * * * establishes that the `decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.'" Pipe Fitters Union Local No.392 v. Kokosing Constr. Co., Inc. (1998), 81 Ohio St.3d 214, 218, quotingNolan v. Nolan (1984), 11 Ohio St.3d 1, 3. "[A]n inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." Nolan, 11 Ohio St.3d at syllabus. "Thus, where at a Crehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law." Id. at 3.
The above principles do not apply to the instant case. First, this court never addressed legal questions in the first appeal because the hospital had not presented proper evidentiary materials to support its first motion for summary judgment. Thomas, Summit App. No. 18789, unreported at 10-11. Second, in moving for summary judgment after remand, the hospital appended the evidentiary materials in support of its motion. These materials were absent from the first summary judgment motion; thus there was an expanded record before the trial court for the second summary judgment. Finally, between the time of the first summary judgment motion and the instant motion, the trial involving the doctor resulted in a verdict adverse to Linda, which was affirmed on appeal.
Linda's first assignment of error is overruled. We now address the merits of the motion for summary judgment.
 III.
Assignment of Error No. 1:
 The trial court erred in again granting summary judgment in favor of Cuyahoga Falls General Hospital by Judgment Entry dated September 27, 1999.
To prevail on a summary judgment motion, the moving party "bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case." (Emphasis sic.) Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. To accomplish this, the movant must be able to point out to the trial court "evidentiary materials [that] show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Id. at 293. If such evidence is produced, the non-moving party must proffer evidence that some issue of material fact remains for the trial court to resolve. Id.
An appellate court reviews an award of summary judgment de novo and, like the trial court, must view the facts in the case in the light most favorable to the non-moving party. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Any doubt must be resolved in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7,12.
Linda's claims against the hospital are: (1) the hospital's involvement in the involuntary commitment, including wrongful imprisonment and negligent treatment and diagnosis; and (2) the hospital staff's breach of confidentiality and failure to facilitate Linda's transfer to the care of another doctor and/or hospital.
 A. Wrongful Imprisonment and Negligent Diagnosis
In its motion for summary judgment, the hospital argued that it had statutory immunity on the wrongful imprisonment claim and the negligent diagnosis and treatment claim, because its participation in Linda's treatment was conducted in good faith, pursuant to judicially-ordered hospitalization pursuant to R.C. 5122.15. See R.C. 5122.34. The hospital further pointed to the jury verdict in favor of Dr. Pakeeree on Linda's claims of negligent diagnosis and treatment and wrongful imprisonment for the involuntary commitment.
This court finds that the hospital met its initial Dresher burden. The burden then shifted to Linda to show that there was some genuine issue of material fact that the hospital's participation in her care was negligent in a manner that exceeded the scope of the statutory immunity provided in R.C. 5122.34. This she failed to do. Thus, viewing the facts in the light most favorable to Linda, the hospital's participation in her court-ordered hospitalization was subject to statutory immunity, notwithstanding that the order was later reversed on appeal. See Thomas, Summit App. No. 18789, unreported, at 4-7. There were no genuine issues of material fact on the claims of wrongful imprisonment and negligent diagnosis, and the hospital was entitled to judgment as a matter of law.
 B. Choice of Treatment Providers
Linda also claimed that the hospital denied her the right to participate in her own treatment, including the choice of doctor and hospital. Linda distrusted Dr. Pakeeree and she wanted to be treated by a different physician at a Kaiser facility, or on an outpatient basis.[1]
The hospital's motion for summary judgment points to the statutory provisions governing the authority to transfer or discharge an involuntarily hospitalized patient. The hospital points to the fact that Linda voluntarily agreed to be treated by Dr. Pakeeree who was authorized to discharge her when he deemed it appropriate. The hospital also pointed to the probate magistrate's statement during the probate hearing that Linda could choose another doctor if she was not happy with Dr. Pakeeree. The hospital also pointed to the fact that Linda was represented by counsel in the commitment proceeding, and that she could have elicited his aid in securing alternative treatment providers. At the doctor's trial, Linda acknowledged that the probate magistrate told her to seek care from another doctor if she desired to, and that she did not fire Dr. Pakeeree or actively solicit care from another physician.
The hospital here met its Dresher burden by establishing that Linda was free, within the guidelines set by the probate court, to secure psychiatric care from another doctor, who could choose to treat her at another hospital or even on an outpatient basis, if that doctor believed such a less restrictive treatment setting was in Linda's best interest. See R.C. 5122.20 and 5122.21.
The burden then shifted to Linda to demonstrate that there was a genuine issue of material fact that the hospital prohibited her from obtaining care from another psychiatrist. Linda did not do this. Rather, she has asserted that the hospital failed to take any affirmative steps to assist her in obtaining the services of another physician. Linda has not offered any support for her assertion that the hospital had an obligation to intrude into or supercede the doctor-patient relationship. Linda states that the hospital knew she distrusted Dr. Pakeeree and that the staff should have acted on this information. A hospital has the duty to follow the orders of an attending physician and to inform the doctor of the patient's condition. Albain v. Flower Hospital (1990),50 Ohio St.3d 251, paragraph five of the syllabus, overruled in part on other grounds by Clark v. Southview Hosp. Family Health Ctr. (1994),68 Ohio St.3d 435, syllabus. In the instant case Dr. Pakeeree testified that he knew Linda distrusted him. The probate court magistrate clearly advised Linda, in the presence of her counsel, that if she could secure the service of a different treating psychiatrist she could discontinue Dr. Pakeeree's treatment. When she testified at the doctor's trial, Linda admitted that she did not fire Dr. Pakeeree and in fact she continued to see him after she left the hospital.
Viewing the facts in the light most favorable to Linda, she did mistrust the doctor, and this fact was known to the doctor and staff alike. Nonetheless, Linda failed to obtain the services of another treating psychiatrist, which was a prerequisite to discontinuing care with Dr. Pakeeree. Under these facts and circumstances, the hospital was not obliged to play any role in securing a different doctor for Linda. The hospital is entitled to judgment as a matter of law.
 C. Breach of Confidentiality
Linda's complaint charged the hospital and Dr. Pakeeree with liability for breach of confidentiality for discussing her medical condition with her estranged husband Gail against Linda's instructions. The complaint specifically alleged that Dr. Pakeeree had breached confidentiality by discussing her treatment with Gail.
In its motion for summary judgment, the hospital argued that even if the hospital could be liable based on respondeat superior for Dr. Pakeeree's alleged breach of confidentiality, the claim is barred by collateral estoppel. Following a jury trial on Linda's claims against the doctor, a verdict was rendered in favor of the doctor, indicating that the jurors did not find any liability on the doctor's part for breach of confidentiality. However, Linda made allegations in an affidavit filed in opposition to the hospital's first motion for summary judgment that hospital staff may have communicated with Gail against her express directions to the contrary. The hospital's motion for summary judgment made no references to this claim. Because the affidavit clearly raises a genuine issue of material fact about the hospital staff's breach of confidentiality, the hospital did not meet its Dresher burden.
In opposing summary judgment, Linda pointed to the affidavit, where she stated that she advised hospital staff, as well as Dr. Pakeeree, that she did not want her condition or treatment discussed with Gail. On the hospital admissions form Linda named her adult daughter Debbra as her next of kin and in a letter dated March 8, 1995, she forbade any communication with Gail. She also stated in her affidavit that she told the doctor and the hospital that "Dr. Pakeeree and/or [the hospital staff] were disclosing confidential and privileged information" to Gail.
A review of the trial transcript indicates that Gail was receiving information about Linda from some undetermined source. Debbra spoke daily with Gail who informed her about Linda's condition while in the hospital. Debbra also testified that she did not know she was listed as Linda's next of kin on the admissions form until after Linda was discharged. Gail testified that he learned of Linda's admission on her first day in the hospital. He could not recall who told him about this. When asked if Linda called him about her admission, Gail responded inaudibly. Gail acknowledged faxing a note to Dr. Pakeeree that stated he had "learned that my wife is receiving an eight hour pass today [March 15, 1995] to go home."
Linda's March 8, 1995 letter advised the doctor and hospital staff that they could not disclose information to Gail but could share information "to all others who may inquire." However, there is a genuine issue of material fact whether hospital staff violated Linda's request for confidentiality. Viewing the facts in the light most favorable to Linda, information about her condition and treatment was communicated to her husband by the hospital despite Linda's express denial of permission to disclose information to Gail. The hospital was not entitled to summary judgment on the breach of confidentiality claim.
We overrule Linda's first assignment of in part and we sustain the assignment of error on Linda's claim of breach of confidentiality only.
 IV.
We affirm the judgment of the trial court in part, and reverse the judgment of the trial court on the claim of the hospital's breach of confidentiality only. We remand the cause to the trial court for further proceedings consistent with this opinion.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
 ___________________________ WILLIAM R. BAIRD
BATCHELDER, P. J., WHITMORE, J., CONCUR
[1] One of Linda's claims deals with the hospital's failure to investigate her allegation that Dr. Pakeeree vacationed at Gail's Florida home just prior to the involuntary commitment. Linda correctly observes that if the doctor was receiving such a benefit from Gail, he had a serious conflict of interest in treating Linda under these circumstances. Linda asserts even now that the hospital should have checked to see if the alleged conflict of interest had any basis in fact. However, throughout the trial against the doctor, Linda did not present any evidence that would support the allegation, nor did she even question Gail or the doctor about whether the doctor had vacationed at Gail's Florida home.